IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMC CORPORATION and EMC ISRAEL DEVELOPMENT CENTER, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> ZERTO, INC., <br><br> Defendant. | C.A. No. 12-956 (GMS) |

# MEMORANDUM

## I. INTRODUCTION

In July of 2012, Plaintiffs, EMC Corporation and EMC Israel Development Center, Ltd., (collectively, "EMC") filed suit against Defendant, Zerto, Inc. ("Zerto"), alleging patent infringement of a total of seven patents. (D.I. 315 at 1). On May 8, 2015, a jury found Zerto liable for infringement of claims in four of the patents: U.S. Patent Nos. 7,577,867 ("the '867 Patent"), 7,603,395 ("the '395 Patent"), 7,971,091 ("the 091 Patent"), and 7,647,460 ("the '460 Patent"). *Id.* at 2.

Without specifying the amount it allotted for each patent, the jury awarded EMC $585,783.00 in damages. *Id.* The award amounts to 72.6% of the total amount that EMC's damages expert identified as minimally adequate to compensate EMC for infringement. *Id.*

On March 31, 2016, the court partially granted EMC judgment as a matter of law, finding Zerto liable for infringement of an additional claim in the '091 patent. (D.I. 299 at 23). Although the court rejected EMC's request for a permanent injunction, it found EMC was entitled to an ongoing royalty covering all infringing sales made after the jury's verdict. (D.I. 299 at 28). The court directed mediation regarding an appropriate royalty and permitted EMC to file a renewed

1

motion for an ongoing royalty rate of post-judgment sales if the parties could not reach an agreement. *Id.* at 3. The parties were unable to reach an agreement. *Id.* Presently before the court is EMC's renewed motion for ongoing royalty rate covering post-judgment sales. While EMC's motion was pending, the United States Court of Appeals for the Federal Circuit affirmed the judgment in favor of EMC, as well as the court's March 31, 2016 order (D.I. 299). (D.I. 337).

## II. STANDARD OF REVIEW

Upon a finding of infringement for a patentee, courts have jurisdiction to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The Federal Circuit has clarified that in some cases, where an injunction is inappropriate, a court may decide to award future royalties to be paid in light of post-judgment infringement. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007) (hereafter "*Paice II*"); *see Creative Internet Adver. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 850 (E.D. Tex. 2009). The Federal Circuit has also given the district court "broad discretion" in matters concerning an ongoing royalty rate. *See Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1378 (Fed. Cir. 2010). A patentee bears the burden of proving its damages by a preponderance of the evidence. *Vulcan Engineering Co., Inc. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002).

## III. DISCUSSION

EMC argues that it is entitled to ongoing royalty rates for Zerto's post-verdict infringement that are triple the rates it requested at trial. (D.I. 315 at 3). In support of its request, EMC argues that: (1) EMC prevailed at trial, enhancing its bargaining position; (2) several other changes in the parties' relationship have occurred since the stipulated hypothetical negotiation in 2011 that support EMC's requested royalty rates; and (3) Zerto's post-verdict infringing sales are willful

2

acts, and therefore the ongoing royalty rates should be enhanced so as to reflect post-verdict willfulness. *Id.* at 10-11, 16.

Courts assessing prospective damages for ongoing infringement "take into account the change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1343 (Fed. Cir. 2012). A district court may also consider "additional evidence of changes in the parties' bargaining positions and other economic circumstances that may be of value in determining an appropriate ongoing royalty." *Id.*

While the law in the area of ongoing royalty rates has not been definitively settled by the Federal Circuit, it seems clear from the Federal Circuit's opinion in *Amado v. Microsoft Corp.*, 517 F.3d 1353 (Fed. Cir. 2008) that the reasonable royalty rate for post-verdict infringement is not limited to the reasonable royalty rate that the jury found for pre-verdict infringement. 517 F.3d at 1361. What remains unclear, however, is where the court should begin its analysis. Some courts have turned to the factors outlined in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). Because the parties did not discuss those factors in the briefing, however, the court will look mainly to the purported changes in bargaining position and economic circumstances to guide its analysis of the proper ongoing royalty rate. The court will then consider whether the ongoing infringement was willful, and whether enhancement is appropriate in light of any willful infringement.

### A. Ongoing Infringement

As a preliminary matter, Zerto argues that the court should not increase the jury's effective royalty rates because Zerto no longer infringes the '460 or the '867 patents, and any infringement of the '395 and '091 patents is *de minimus*. (D.I. 322 at 6–11). Specifically, Zerto claims that: (1)

3

it implemented two separate design changes that avoid the '460 patent; (2) it no longer directly infringes the '867 patent; and (3) any royalty on the '395 and '091 patents should only apply to Zerto's customers' use of the Zerto virtual replication product with the VSS agent. *Id.* EMC argues, however, that Zerto still infringes the '460 patent because Zerto's redesign attempts fails to design-around the '460 patent claims. (D.I. 333 at 2–4). EMC also claims that Zerto still infringes the '867 Patent because Zerto still maintains and controls the computer-readable storage code. *Id.* at 4–5. As for the '395 and '091 patents, EMC contends that Zerto still infringes because the court found infringement of those patents at trial and Zerto has not ceased selling the infringing products post-trial. (D.I. 322 at 6); (D.I. 333 at 1).

The court declines to consider whether Zerto's re-designs avoid EMC's patents. The court will not award royalties on the '460 patent for any sales that occurred after December 2015. Questions regarding the redesigns are best resolved in a separate hearing with limited, expedited discovery. *See* (D.I. 315 at 9 n.6).

Zerto alleges that in order to directly infringe claim 45 of the '867 patent, "both Zerto Virtual Replication and the Zerto VSS Agent must be installed by Zerto Inc. (not a Zerto customer) on a computer in the United States." (D.I. 322 at 9). Zerto asserts that it has not installed any copies of Zerto Virtual Replication and the VSS Agent software on a computer since the trial. Thus, Zerto claims, "a royalty cannot be imposed on the sale of a product by Zerto where the use of that product by the Zerto customer to whom it is sold is not an act of infringement." *Id.* Zerto's argument is similar to the one it made in its Renewed Motion for Judgment as a Matter of Law: "Zerto disputes that it ever had a copy of the VSS Agent Software, which is required to satisfy [claim 45 of the '867 patent] . . . ." (D.I. 299 at 24). The court found that there was evidence from which a jury could conclude that Zerto maintains the server from which the software is

4

downloaded. *Id.* In its order denying Zerto's motion—and finding that substantial evidence supported the jury's finding that Zerto directly infringes claim 45 of the '867 patent—the court explained that: (1) EMC produced evidence that Zerto's customers download the VSS Agent software from Zerto's website; (2) the Zerto Virtual Manager Administration Guide instructs users to access the "Zerto Support Portal downloads page"; and (3) installation of the software includes a license agreement between the user and Zerto. *Id.* Zerto has offered no evidence that it no longer controls access to the server from which a customer downloads both the ZVR and the VSS Agent software. For that reason, the court will award an ongoing royalty for Zerto's infringement of the '867 patent.

Zerto argues that the '091 and the '395 patents are only infringed when Zerto's product is used with the Zerto VSS Agent. (D.I. 322 at 10). Accordingly, Zerto believes that royalty should be owed only when a Zerto customer has the VSS Agent installed because a customer cannot satisfy the claim and place the application in a "quiescent state" without that additional software. *Id.* When the court considered Zerto's Renewed Motion for Judgment as a Matter of Law, however, it noted that "the jury could have credited the theory of either expert when it came to the "quiescent state" limitation. (D.I. 299 at 20). Because the court must presume that "the jury resolved the underlying factual disputes in favor of the verdict winner," *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1369 (Fed. Cir. 2013) (citing *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1100 (3d Cir. 1995)), EMC's counter argument prevails. EMC's counter argument is that "the claim limitation is satisfied by the ZVR software *itself*, because it is configured to create event markers when a production application is in a quiescent state." (D.I. 299 at 20) (emphasis added). The court is not going to allow Zerto to relitigate its "quiescent state" arguments in its opposition to EMC's motion for an ongoing royalty rate. For

that reason, the court believes that the royalty rate applicable to the '395 and '091 patents should apply to all customers' use of the Zerto Virtual Replication Software. The court must now proceed to determine the applicable ongoing royalty rate for infringement of the '460 patent from time of the trial to the date of the first redesign (December 2015), and for all infringement of the '867, '395 and '091 patents from the time of the trial.

### B. Ongoing Royalty

The jury awarded EMC $585,783.00. (D.I. 212). That award represented 72.6% of the total amount that EMC's trial expert explained was "minimally adequate to compensate EMC for Zerto's infringement." (D.I. 315 at 5); *see* (D.I. 225 ¶ 6). If the court assumes the jury discounted the damages for each patent equally, the award would translate into the following effective reasonable royalty rates:

| Patent | Enterprise (Per VM) | Cloud (Per VM, Per Month) |
| --- | --- | --- |
| '460 Patent | $5.63 | $0.25 |
| '867 Patent | $3.63 | $0.18 |
| '395 and '091 Patents | $8.35 | $0.40 |

(D.I. 315 at 6). The court will use these royalty rates as its starting point to determine the ongoing royalty rate.

First, EMC argues that, as the trial victor, it may demand higher royalty rates than it would have demanded during the hypothetical negotiation. Further, EMC points out that it partially prevailed on its motion for judgment as a matter of law when the court found that Zerto was liable for infringement of an additional claim of the '091 patent. (D.I. 299). Since it filed the motion at issue here, EMC has also prevailed on appeal to the Federal Circuit on June 12, 2017. (D.I. 315 at 10). All of those facts, however, must be presumed by the damages expert and the jury when conducting a reasonable royalty analysis. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301,

6

1325 (Fed. Cir. 2009) ("The hypothetical negotiation also assumes that the asserted patent claims are valid and infringed."); *see also* Mark A. Lemley, *The Ongoing Confusion over Ongoing Royalties*, 76 Mo. L. Rev. 695, 704 (2011) ("The ongoing royalty question is the very same question the jury has just resolved: what would a willing buyer and a willing seller who know the patent is valid and infringed have agreed to as a royalty rate?"). Nonetheless, the court recognizes that the "hypothetical negotiation" presented to the jury at trial envisions a negotiation that occurs just before infringement begins, meaning that there will be a degree of uncertainty and approximation inherent in the calculation. *See Lucent*, 580 F.3d at 1324 (explaining that the hypothetical negotiation "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began"). When the court considers a hypothetical negotiation that occurs post-trial, that approximation and uncertainty are absent. The question is really whether removing such uncertainty materially affects the royalty rate calculation. The court does not believe it does.

The court acknowledges the Federal Circuit's holding in *Amado*. In that case, the Federal Circuit explained that there was a "fundamental difference" between "a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement." 517 F.3d at 1361. It is not entirely clear, however, that *Amado* applies to the facts of this case. An important distinction in *Amado* is that the Federal Circuit was considering the district court's grant of an injunction and then its subsequent stay of that injunction in favor of an ongoing royalty award. *See id.* at 1362 ("When a district court concludes that an injunction is warranted, but is persuaded to stay the injunction pending an appeal, the assessment of damages for infringements taking place after the injunction should take into account the change in the parties' bargaining positions . . . as well as the evidence and arguments found material to the granting of the injunction and the stay."). Here,

7

the court considered and denied EMC's request for a permanent injunction. As the district court recognized in *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620 (E.D. Tex. 2009), "the threat of a permanent injunction serves as a big stick, essentially framing negotiation in terms of how much an adjudged infringer would pay for a license to continue its infringing conduct." 609 F.Supp.2d at 624. When an injunction is found to be improper, however, there appears to be no material difference between the parties' current situation and the one it was in at the time of the hypothetical negotiation. Thus, this factor weighs against granting EMC a higher ongoing royalty rate.

Second, in addition to the finding of infringement, EMC alleges several other circumstances have changed that support its request for an increased royalty rate. EMC argues that Zerto has experienced great economic success since 2011, when the hypothetical negotiation would have taken place. (D.I. 315 at 12). EMC also contends that EMC and Zerto are now "head-to-head competitors in a narrow market"—leading to price erosion—unlike at the time of the hypothetical negotiation. *Id.* at 12–13.

In deciding the royalty rate for post-trial infringement, the court can properly consider "any new evidence that was not before the jury and additionally any changed circumstances (other than willfulness) between a hypothetical negotiation that occurred in [late 2011] (which the jury determined) and a hypothetical negotiation that would occur [now] after the judgment." *Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 647 (E.D. Tex. 2011), *aff'd sub nom. Mondis Tech. Ltd. v. Innolux Corp.*, 530 F. App'x 959 (Fed. Cir. 2013). The court finds, however, that EMC has not proffered enough evidence to show that Zerto's increased sales can be attributed to the patented technology or that the parties are now head-to-head competitors.

8

EMC asserts that it should be entitled to a higher royalty rate than the one awarded at trial because Zerto "is now a mature company with 130 million in capital investments and annual sales that dwarf EMC's annual sales of RecoverPoint for VMs." (D.I. 315 at 7). While that may be true, that bald assertion does nothing to demonstrate how Zerto's success as a company could be attributed to the profitability of the patented features. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (recognizing that the "entire market value rule" is a narrow exception, applicable to situations where a party can show that "the patented feature drives the demand for an entire multi-component product").

Further, the court already considered EMC's second argument when it ruled on EMC's Motion for Permanent Injunction. (D.I. 299 at 25). In the order addressing that motion, the court found that EMC's characterization of Zerto as its direct and only competitor in the "hypervisor-based replication market" "unreasonably narrow[ed] the market of data protection systems, which is highly competitive and includes many players." *Id.* Additionally, the court previously found that the evidence cut against a finding of price erosion because "there [was] no evidence customers would have been willing to pay EMC's original price for that product if Zerto had not already been in the market." *Id.* at 26. Therefore, a lack of significant post-verdict change in economic circumstances between the parties counsels against increasing the royalty rate above the jury's award.

## C. Willfulness

EMC argues that Zerto continues to infringe its patented technology after EMC was successful in this court and on appeal. Accordingly, EMC contends that continued infringement is now willful, and any royalty rate the court awards should be enhanced under 35 U.S.C § 284.

9

It is within the court's discretion to award enhanced damages under 35 U.S.C. §284. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016). The court takes into account the particular circumstances of each case, while recognizing that enhanced damages "should generally be reserved for egregious cases typified by willful misconduct." *Id.* When the court considers whether to enhance damages based on willfulness, it turns to the factors set forth in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992), overruled on other grounds by *Markman v. Westview Inst. Inc.*, 52 F.2d 967 (Fed. Cir. 1995): (1) deliberate copying; (2) defendant's investigation and good faith-belief of invalidity or non-infringement; (3) litigation behavior; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of the misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) attempted concealment of the misconduct. *Id.* While these factors are designed to guide the analysis, "[t]he paramount determination in deciding to grant enhancement damages for patent infringement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Id.* at 826. "The court must consider factors that render defendant's conduct more culpable, as well as factors that are mitigating or ameliorating." *Id.*

The court finds application of the *Read* factors unnecessary in this case. First, the jury did not find that Zerto's infringement was willful, and, instead, they thought that ordinary damages were adequate to compensate EMC. (D.I. 213). Further, the Federal Circuit has found in *Amado* that, even though the district court awarded an injunction, "willfulness . . . [was] not the inquiry when the infringement [was] permitted by a court-ordered stay" of that injunction pending appeal. *Amado*, 517 F.3d at 1362. If willfulness was not the proper inquiry in *Amado* where the district court awarded an injunction—despite staying it pending appeal—it seems equally improper here where the court already decided that the equities did not weigh in favor of granting EMC an

injunction. In fact, as the court recognized in *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 3034655, at *9 (E.D. Tex. July 18, 2017), "the defendant's continuing infringement . . . benefits the plaintiff by generating sales from which ongoing royalties can be awarded." For those reasons, the court declines to enhance the ongoing royalty based on a theory of willful infringement.

## IV. CONCLUSION

For the foregoing reasons, the court will award ongoing royalties as follows:[1]

| Patent | Enterprise (Per VM) | Cloud (Per VM, Per Month) |
|---|---|---|
| '460 Patent[2] | 1.0% ($5.63/$560) | 1.0% ($0.25/$25) |
| '867 Patent | 0.6% ($3.63 /$560) | 0.7% ($0.18/$25) |
| '395 and '091 Patents | 1.5% ($8.35/$560) | 1.6% ($0.40/$25) |

Dated: August 10, 2017

UNITED STATES DISTRICT JUDGE

---

[1] The court awarded ongoing royalties as a percentage of sales because EMC indicated that it would be willing to accept such a royalty.

[2] EMC is only entitled to royalties for infringement of the '460 patent up until the date of the first redesign. The parties are directed to contact chambers to discuss the schedule for a hearing on Zerto's redesigns.

11